[No. 18718.   Department One.   December 1, 1924.]

CARLISLE-PENNELL LUMBER COMPANY, *Respondent*, v. JOE CREEK SHINGLE COMPANY, *Appellant*.[1]

LOGS AND LOGGING (3)—CONTRACTS FOR CUTTING LOGS. A contract authorizing defendant to cut all the cedar timber on a certain section, and all timber upon certain "cut over" lands in other named sections belonging to plaintiff, does not include any unlogged lands in such other sections, notwithstanding another clause wherein the defendant agrees to cut "all" the cedar timber on such last named sections.

Appeal from a judgment of the superior court for Grays Harbor county, Sheeks, J., entered June 9, 1923, in favor of the plaintiff, in an action for an injunction, tried to the court. Affirmed.

*Wm. E. Campbell,* for appellant.
*Theo. B. Bruener,* for respondent.

BRIDGES, J.—At the time of the making of the contract hereinafter mentioned, the respondent's predecessor, the Copalis Lumber Company, was the owner

[1]Reported in 230 Pac. 425.

of the timber located on the S. W. ¼ of section 17, and all of sections 13 and 14, in township 20 N. R. 12 W., in Grays Harbor county. The S. W. ¼ of section 11 had never been logged, but certain portions of sections 13 and 14 had been logged some years previous, there being left, however, several forty acre tracts untouched. The contract was between the Copalis Lumber Company, as the first party, and Joe Creek Shingle Company, as the second party. The portions of it material to this case are:

"1. The first party authorizes the second party to cut the cedar timber situate in the southwest quarter of section eleven (11) in township twenty (20) N. R. 12 W.

"2. The first party authorizes the second party to cut and make into shingle bolts all the cedar upon certain cut over lands belonging to the first party, which are situate in sections 13, 14 (15, 21 and 22), all in township 20 north, range 12 W.

"3. The second party agrees to cut all of the cedar timber upon the southwest quarter of section eleven (11) and manufacture the same into shingles at second party's mill, and to pay the first party at the rate of forty cents (40c) per thousand shingles for all of said cedar timber.

"4. The second party agrees to cut all of the cedar timber upon sections 13, 14 (15, 21 and 22), and manufacture the same into shingle bolts at second party's shingle mill, and to pay the first party at the rate of twenty cents (20c) per thousand shingles for all said cedar timber. . . .

"5. The second party agrees that in its logging operations it will cut and remove all of the merchantable cedar timber, clearing the land of such timber as it proceeds; that it will take all proper precautions to save and conserve the whole of said timber; that it will cut and manufacture the shingles from said cedar timber and from said shingle bolts in a good workmanlike and merchantable manner. . . ."

There is no controversy in this action over sections 11, 15, 21 and 22. The appellant claimed the right, and threatened, to cut the cedar timber on those portions of sections 13 and 14 which had not previously been logged, as well as the cedar on the logged-off lands within those sections. It is conceded that considerable valuable shingle material remained on the logged-off lands, as is usually the case. The respondent brought this action to enjoin appellant from encroaching upon the unlogged portions of sections 13 and 14. The trial court entered a judgment in accordance with the prayer of the complaint.

It seems to us that this contract is perfectly plain and unambiguous, and that it authorized the appellant to remove the cedar from only such lands in sections 13 and 14 as had previously been cut over; indeed, the contract expressly so says, for section 2 authorizes the appellant to "make into shingle bolts all the cedar timber upon certain cut over lands" in these two sections. Everybody knows, and it is, of course, here conceded that cut over lands are lands which have at some time been logged. To give the contract the construction contended for by appellant, that is, to authorize it to cut the cedar timber on the lands which had not been previously logged, would be to read out of it the words "cut over lands." It was concededly the purpose of section 1 of the contract to authorize the appellant to cut on lands which had not been previously logged, and to express that idea the contract authorizes the appellant to cut "the cedar timber situate in the S. W. ¼ of section 11." Nor is there anything in sections 4 and 6 of the contract which tends to indicate that appellants were entitled to cut any of the unlogged lands in sections 13 and 14. It is true that section 4 says that the second party is to

"cut all of the cedar timber," but that must be read in connection with paragraph 2 which authorizes the cutting of the cedar only on the previously logged-off lands. The same thing is true of section 6. Other expressions in the contract show the intention of the parties to have been as we have stated it, for it is provided that the cedar in the southwest quarter of section 11, which had never been logged, should be cut into shingles, while the cedar on the cut over lands was to be made into shingle bolts.

We cannot read the contract otherwise than as construed by the trial court, and for that reason the judgment is affirmed.

MAIN, C. J., PARKER, HOLCOMB, and TOLMAN, JJ., concur.